**Opinion issued November 29, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-11-00936-CR

———————————————

**REESARA ASHLEY CARTER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 09CR0489**

---

## MEMORANDUM OPINION

Reesara Ashley Carter appeals the trial court's adjudication of her guilt.

Carter was placed on deferred adjudication community supervision after pleading

guilty to committing a state jail felony theft. *See* TEX. PENAL CODE ANN. § 31.03

(West 2011). The State moved to adjudicate Carter's guilt alleging numerous violations of the conditions of her community supervision. Carter pleaded "true" to one allegation and "not true" to eight others. After a hearing, the trial court found all nine allegations true, adjudicated Carter's guilt, and imposed punishment of two years' imprisonment. In three issues on appeal, Carter asserts that her plea of "true" was not voluntary, the State did not adduce evidence that she was able to make the court-ordered payments, and the trial court "may have not considered Carter's particular circumstances" when deciding to adjudicate her guilt. We affirm.

## Background

In March 2009, Carter pleaded guilty to the offense of state jail felony theft. The trial court placed Carter on deferred adjudication community supervision for three years. The terms of Carter's community supervision required that she "[c]ommit no offense against the laws of the State of Texas"; report to her supervision officer as directed; report any change of address to her supervision officer; pay a monthly community supervision fee; pay court costs; pay restitution to the victim; reimburse Galveston County for attorney's fees; make a payment to a Crime Stoppers Program; and perform 120 hours of community service. A few months later, Carter's community supervision was transferred from Galveston

2

County to Harris County, and she began reporting to a community supervision officer in Harris County.

But in June 2010, Carter was convicted of a subsequent theft. And because Carter did not report to her community supervision officer in Harris County after August 2010, her community supervision was transferred back to Galveston County. Carter did not report to her Galveston County community supervision officer either. She also failed to meet her obligations to perform community service and pay court-ordered costs, fees, and restitution.

The State filed a motion to adjudicate Carter's guilt, alleging that Carter had violated the terms of her community supervision. On September 14, 2011, the trial court held a hearing at which Carter pleaded true to the allegation that she committed the subsequent offense of theft. After hearing testimony from Carter's Galveston County community supervision officer, the court liaison for the Galveston County Adult Probation department, and Carter, the trial court found true all grounds alleged for adjudication, adjudicated Carter's guilt for the underlying offense, and sentenced her to two years' confinement. Carter filed a motion for new trial. Carter presented no evidence at the hearing on that motion, and the trial court denied it. Carter appealed.

## Analysis

### A.    Standard of Review

When a trial court decides to adjudicate the guilt of a person who has been placed on deferred adjudication community supervision, that decision is reviewable in the same manner as a decision to revoke community supervision in a case in which an adjudication of guilt has not been deferred.  TEX. CODE CRIM. PRO. ANN. art. 42.12, §5(b) (West Supp. 2012).  "Appellate review of an order revoking probation is limited to abuse of the trial court's discretion."  *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (quoting *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)).  The State's evidentiary burden in a revocation case is to show a violation of the conditions of community supervision by a preponderance of the evidence.  *Id.* (citing *Cardona*, 665 S.W.2d at 492).  Moreover, "[a] finding of a single violation of the terms of community supervision is sufficient to support revocation."  *Silber v. State*, 371 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) ("We need not address appellant's other contentions since one sufficient ground for revocation will support the court's order to revoke probation.").  Thus, to prevail on appeal, an appellant must successfully challenge all of the findings that support the trial court's revocation order.  *Silber*, 371 S.W.3d at 611; *see also Moore*, 605 S.W.2d at 926.

**B.    Analysis**

In her third issue, Carter contends the trial court abused its discretion by not considering "Carter's particular circumstances and her intent" when it found true the allegations that Carter failed to report.  Carter argues that considering all of her circumstances, the trial court abused its discretion in determining that she willfully violated the terms of her community supervision.

Carter contends she reported to her community supervision officer for over a year, until August 2010, "a few months after her child was born."  At about the time her child was born, in June 2010, Carter's aunt, with whom Carter had been living, moved back to Louisiana.  After that, Carter had no permanent address.  Carter contends that she kept her Harris County supervision officer informed of where she was living until her aunt moved.  At the hearing, however, Carter admitted that, at some point, "I stopped reporting then."  Carter also identifies her lack of transportation, lack of a job, and the fact that she inquired about transferring her community supervision to Louisiana where she had family to help her as circumstances the trial court should have considered.  However, it is undisputed that Carter quit reporting after August 2010.  Thus, it is undisputed that Carter failed to report for the months of September, October, November, and December of 2010, as well as January 2011.  Because there is evidence to support the trial court's finding by the preponderance of the evidence that Carter failed to

5

report to her community supervision officer as required, the trial court did not abuse its discretion in adjudicating Carter's guilt. *See Rickel*, 202 S.W.3d at 763.

Carter cites *Aranda v. State*, 684 S.W.2d 794 (Tex. App.—Fort Worth 1985, pet ref'd), and the dissenting opinion in *Pierce v. State*, 67 S.W.3d 374, 381 (Tex. App.—Waco 2001, pet. ref'd), for the proposition that she did not "willfully" violate the terms of her community supervision, and, therefore, the trial court abused its discretion by deciding to adjudicate her guilt in light of all of her pertinent circumstances. In *Aranda*, the appellant did not read or write English, his community supervision was transferred to Kansas, he reported to the Kansas community supervision officer and complied with all requirements in Kansas, continued to make required payments to the Texas community supervision officer, and the Texas community supervision officer never contacted appellant or the Kansas community supervision officer to inquire why appellant did not continue to report to Texas. *Aranda*, 684 S.W.2d at 799–800. Under those circumstances, the court of appeals held the trial court abused its discretion in revoking community supervision because the evidence did not support a finding that the appellant willfully failed to report. *Id.* at 800. Relying on *Aranda*, the dissenting justice in *Pierce* concluded a single failure to report did not constitute a willful violation when the evidence showed: the single failure to report occurred when the appellant, who had a history of skin cancer, had had a cancerous lesion removed

6

and was recuperating at his mother's house in another city; the appellant's Mental Health and Mental Retardation Authority caseworker[1] informed the supervision officer why the appellant failed to report; and, after missing a single report while treating his cancer, the appellant did not miss any reports for the next two and a half years. *Pierce*, 67 S.W.3d at 379–80 (Vance, J., dissenting).

Carter's circumstances are readily distinguishable from those in *Aranda* and *Pierce*. Although Carter's community supervision was transferred like the appellant's in *Aranda*, there was no language barrier for Carter to overcome, she did not report to the Harris County community supervision officer regularly after the first transfer or to the Galveston County supervision officer after her case was returned to Galveston County, and Carter also failed to comply with other terms of her community supervision. And, unlike *Pierce*, where the dissenting justice noted no evidence showed that an appellant recuperating from skin cancer treatment willfully failed to report a single time, Carter testified that, after her aunt moved back to Louisiana, she called the Harris County supervision officer because she had no transportation to the meeting. Carter testified that he allowed her to miss

---

[1] Pierce was "intellectually delayed," and, although he could "do a lot on his own," he needed assistance with "paying bills, and getting him to places, transportation, things like that. *Pierce*, 67 S.W.3d at 379 (Vance, J., dissenting). Pierce's caseworker also accompanied appellant to one of his two monthly meetings with his supervision officer to help "with all his legal papers, and things like that." *Id.*

that meeting and told her to call to make arrangements for another meeting. Carter testified that she never called him back.

We overrule Carter's third issue concerning the trial court's finding of true on her failure to report. Because we have concluded the finding of true is supported by a preponderance of the evidence and the trial court did not abuse its discretion in adjudicating Carter's guilt, we need not address Carter's remaining arguments. *See Moore*, 605 S.W.2d at 926; *Silber*, 371 S.W.3d at 611.

**Conclusion**

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).